# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
DARIAN JACKSON,                         )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )      Civil Action No. 08-1941  (RBW)
                                        )
ANNA ACEDO and SAFEWAY INC.,            )
                                        )
            Defendants.                 )
_____)

## MEMORANDUM OPINION

Darian Jackson, the pro se plaintiff in this civil lawsuit, seeks $400,000 in damages,

Complaint (the "Compl.") at 11, against her employer, Safeway Inc. ("Safeway"), and Anna

Acedo, an assistant manager at the Safeway store where the plaintiff is employed, id. at 1–2, for

"alleg[ed] continuous harassment, hostile work environment, retaliation, race and sex

discrimination, [and] unsafe working conditions" in violation of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2006), id. at 1.  Currently before the Court is the

defendants' motion to dismiss the plaintiff's complaint in its entirety pursuant to Federal Rule of

Civil Procedure 12(b)(6).[1]  After carefully considering the plaintiff's complaint, the defendants'

motion, and all memoranda of law and exhibits relating to that motion,[2] the Court concludes for

---

[1]  The plaintiff has also filed a motion entitled "Plaintiff's Motion for Clarification" in which she states that if she "is not in compliance with the [C]ourt and has not met the legal requirement[s of a Title VII claim], it is because she is pro se and may not have a clear understanding as to what is being required of her," and "request[s] clarification from the [C]ourt[] if this is in fact the case." Plaintiff's Motion for Clarification at 2.  While the Court sympathizes with the plaintiff's position, it is ethically prohibited from providing her with the sort of legal advice that she evidently desires, and must therefore deny her motion for the requested clarification.

[2]  In addition to the plaintiff's complaint and the defendants' motion, the Court considered the following documents in reaching this decision: (1) the Memorandum of Law in Support of Defendants' Motion to Dismiss (the "Defs.' Mem."), (2) Petitioner's Opposition to Defendant's Motion to Dismiss (the "Pl.'s Opp'n"), and (3) the Defendants' (continued . . . )

the reasons that follow that it must grant the defendant's motion and dismiss the plaintiff's

complaint in its entirety.

## I. Background

The following facts are alleged in the plaintiff's complaint.  The plaintiff, a fourteen-year

employee of the Safeway store located on Northwest Columbia Road in the District of Columbia,

alleges that she was "subject[ed] to [a] hostile work environment and harassment on a continuous

basis from January [] through mid-May [of 2008] by" Acedo, an assistant manager at the same

store.  Compl. at 2.  Specifically, Acedo allegedly "listen[ed] to . . . [the plaintiff's]

conversation[s]," id. at 3, "refused to refund the plaintiff's monies," id. at 4, questioned the

plaintiff when the plaintiff was sitting during her shift to ease a back injury, id. at 5, "timed [the

plaintiff] when using the restroom," id. at 9, and called her a "liar" in front of "subordinates and

customers," id. at 8.

The plaintiff also alleges that Acedo once stated "that it is easy for Americans to get

jobs" and that "they did not have to earn them."  Id. at 6.  In addition, Acedo allegedly "trapped

[the plaintiff] in [an] office [at the Safeway store where they work]," id. at 8, and "accused [her]

of talking about [Acedo] to other employees and customers and lying," id. at 7–8.  Acedo later

allegedly apologized for her behavior and "blamed her actions on her medication."  Id. at 8.

Further, upon finding an amount of money missing from the office till, Acedo allegedly

"insinuated that [the p]laintiff knew where the money was."  Id. at 7.

The plaintiff alleges that, in response to these alleged incidents, she complained about

Acedo's conduct to her supervisor, Lydia St. Rose, and her former assistant manager, Travis

---

Reply Brief in Response to Plaintiff's Opposition to Defendants' Motion to Dismiss (the "Defs.' Reply").  The
plaintiff also filed a surreply without prior leave of the Court, which is not permitted under this Court's local rules.
See Local Civ. R. 7 (permitting the filing of only oppositions to motions and reply memoranda in support thereof).
Accordingly, the Court did not consider that filing in reaching its decision.

Beynum.  Id. at 2.  Allegedly, "whenever [the p]laintiff complained of the continuous harassment and hostile work environment . . . [she] would receive responses such as, '[M]aybe [Acedo] will quit; maybe Donna (Maxwell) will transfer [Acedo].  Just ignore her.'"  Id. at 2–3.  The plaintiff maintains that she requested "a change in work schedule [] to eliminate having to work with [Acedo]," but that St. Rose allegedly informed her that she would have to "learn how to get along and work together" with Acedo because "the [requested] change in work schedule was not possible."  Id. at 2.  St. Rose allegedly advised the plaintiff to "stay in the check stand" whenever Acedo arrived to work.  Id. at 3.  "[These] responses frustrated [the p]laintiff" because she allegedly "was assigned to work in the front office, . . . not stay in the check stand to avoid [Acedo]."  Id.

When the plaintiff informed St. Rose about her back injury and the resulting alleged problems with the defendant, St. Rose allegedly "verbally reprimanded Acedo and, in turn, [the p]laintiff continued to experience a hostile work environment throughout the end of [her] work shift."  Id. at 5-6.  The plaintiff approached St. Rose again after Acedo allegedly trapped the plaintiff in the office and "informed St. Rose of [Acedo's] actions and [the plaintiff's] desire to go home."  Id. at 9.   St. Rose allegedly told the plaintiff "not to leave, continue work[,] and call back tomorrow to get the telephone number of" a human resources advisor.  Id.

Following this advice, the plaintiff allegedly attempted to contact a human resources advisor on May 22, 2008, "leaving a message on his answering machine of the events and her intentions to file a grievance/complaint and or [c]harge against [Acedo]."  Id.  The plaintiff then allegedly left messages for her union representative.  Id.  After receiving no response from either of these individuals, the plaintiff allegedly sent "certified letters to both," id., "indicating that she ha[d] yet[,] as of the date of the letter, to be contacted by [a human resources advisor,] and

request[ing] [] a meeting to discuss [her] experiences, concerns[,] and the results/findings of [the human resource advisor's] investigation and where to go from that point," id.  Allegedly, "[the] plaintiff [was informed] that [the human resources advisor] did not believe he needed to contact [her] or have a meeting because he believed the situation had been handled and [that Acedo] was being transferred and [was no] longer at [the] store."  Id.

The plaintiff asserts four claims—all purportedly raised under Title VII—in her complaint.  First, she claims that a series of antagonistic encounters with Acedo allegedly occurring from "January[ of] 2008 through mid-May[ of 2008]" constituted continuous harassment and created a hostile work environment.  Id. at 2.  Second, she claims that her alleged "occasional [] subject[ion] to racial comments" from Acedo "such as 'You Americans'" amounts to discrimination on the basis of race and national origin.  Id.  Third, the plaintiff asserts a cause of action for retaliation, maintaining that "she has been retaliated against because she brought [] matters to management's attention."  Id. at 4.  Fourth, she claims that Acedo's conduct at the Safeway store where the plaintiff works has created an unsafe work environment that somehow violates Title VII.  Id. at 1, 8–9.  Finally, the plaintiff makes a smattering of factual allegations that could be construed as claims for false imprisonment and defamation against Acedo under District of Columbia law.  See id. at 7–8 (alleging that Acedo "trapped [the p]laintiff in the office" one night "by standing in front of the door" and refusing the plaintiff's requests to let her leave); see also id. at 8 (alleging that Acedo "damaged [the p]laintiff's character" by "[r]epeatedly calling [the p]laintiff a 'liar' and accusing [the p]laintiff of lying and talking about [Acedo]").

The defendants filed their motion to dismiss on December 4, 2008.  In support of that motion, the defendants contend that "[the p]laintiffs' Title VII claims against [] Acedo fail

[because] individuals cannot be personally liable for violations [under] Title VII," Defs.' Mem. at 2, and that they "are unaware of any specific provision of Title VII that enables [the p]laintiff to sue them for some generalized claim of unsafe working conditions," id. at 12.  They further maintain that the plaintiff's discrimination and retaliation claims fail against both parties because "[the] plaintiff has not alleged that she suffered any 'adverse employment action,'" id. at 2, 3–7, 11, and that the plaintiff's discrimination and hostile work environment claims must be dismissed because "[the p]laintiff has failed to allege any facts from which an inference of discrimination based on race, sex, or national origin could arise."  Id.; see also id. at 8 (describing the interactions between the plaintiff and Acedo as "routine personnel disputes between employees and managers").  Finally, the defendants concede that the plaintiff has alleged facts that could be construed as giving rise to claims for false imprisonment and defamation, but argue that these "claims" are fatally defective as well.  Id. at 12–16.

The plaintiff asserts in her opposition that "her pleading provides the requisite 'short and plain' statement of her claims and fair notice of the legal and factual bases for those claims." Pls.' Opp'n at 2–3.  She further argues that "[b]ecause race discrimination in employment is a claim upon which relief can be granted, there is no requirement that [she] plead particular facts supporting a prima facie case . . . to survive a motion to dismiss for failure to state a claim."  Id. at 3 (internal citation and quotation marks omitted).  The defendants counter that the plaintiff has "ignore[d] virtually every one of [their] arguments," Defs.' Reply at 2, and requests that the plaintiff's complaint be dismissed with prejudice, id. at 3.

## II. Standard of Review

The standard governing the defendants' motion is well-established.  On a motion to dismiss under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true and

must grant [the] plaintiff the benefit of all reasonable inferences from the facts alleged" in considering motions to dismiss under Rule 12(b)(6).  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).  The Court may only consider the facts alleged in the complaint, any documents attached as exhibits thereto, and matters subject to judicial notice in weighing the merits of the motion.  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624–25 (D.C. Cir. 1997).  The Court's focus is therefore restricted to the facts as alleged by the plaintiff, which must be sufficiently detailed "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).

The plaintiff cites Sparrow v. United Air Lines, Inc., 216 F.3d 1111 (D.C. Cir. 2000), for the proposition that "'I was turned down for a job because of my race is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6),'" Pl.'s Opp'n at 3 (quoting Sparrow, 216 F.3d at 1115 (internal citation and quotation marks omitted)).  The plaintiff's description of Sparrow's holding is accurate, see Sparrow, 216 F.3d at 1113–16 (holding that a plaintiff alleging a violation of 42 U.S.C. § 1981 need not allege facts establishing a prima facie case for discrimination in his complaint), but her reliance on that case is outdated.  The court in Sparrow explicitly invoked Conley v. Gibson, 355 U.S. 41 (1957), as the basis for its decision, see Sparrow, 216 F.3d at 1113–15 ("The grounds for the district court's dismissal of [the plaintiff's] complaint are inconsistent with Rule 8 and Conley."), and in Twombly the Supreme Court rejected the expansive language in Conley to the effect that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley, 355 U.S. at 45–46, concluding that the statement had, "after puzzling the profession for 50 years, . . . earned its retirement," Twombly, 550 U.S. at 563.  The Court further opined that to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must

allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  The Court

therefore concludes that Sparrow is no longer binding authority in light of these observations by

the Supreme Court in Twombly, and will instead apply the standard set forth in the latter opinion

in assessing the sufficiency of the plaintiff's allegations in her complaint.

### III. Legal Analysis

Title VII provides that "[i]t shall be an unlawful employment practice for an

employer . . . to . . . discriminate against any individual with respect to [her] compensation,

terms, conditions, or privileges of employment[] because of such individual's race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Where, as here, there is no direct

evidence of discrimination based upon one of these impermissible categories, the Court assesses

the plaintiff's claim under the framework set forth by the Supreme Court in McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, "the plaintiff

must establish a prima facie case of discrimination" in the first instance, Reeves v. Sanderson

Plumbing Prods., Inc., 530 U.S. 133, 142 (2000), after which "the burden shifts to the defendant,

who must 'articulate some legitimate, non-discriminatory reason' for the adverse action,'"

Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007) (quoting McDonnell Douglas, 411 U.S.

at 802); see also Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999) (establishing that, like a

claim of discrimination, "[c]laims of retaliation are governed by the McDonnell Douglas burden-

shifting framework").[3]

---

[3]  Assuming that the defendant can articulate a legitimate, non-discriminatory reason for its treatment of the plaintiff, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s]," Reeves, 530 U.S. at 142–43 (internal citation and quotation marks omitted), and "the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason," Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003).  The Court need not consider whether or to what extent the plaintiff must allege facts that would satisfy this final evidentiary hurdle because it is plain from the face of the plaintiff's complaint that she has not alleged facts sufficient to establish even a prima facie case of discrimination, retaliation, or hostile work environment under Title VII.

As an initial matter, the plaintiff's complaint is plainly defective insofar as she seeks relief against Acedo personally.  "[W]hile a supervisory employee may be joined as a party defendant in a Title VII action, that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII."  Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995).  The plaintiff has already named Acedo's employer, Safeway, as a defendant in this case.  Consequently, naming Acedo as a defendant as well is redundant. The Court will therefore dismiss Acedo as a defendant in this case.

The plaintiff's discrimination claim against Safeway fares no better.  To establish a prima facie case for discrimination, a plaintiff must show that "(1) she is a member of a protected class[,] (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005) (internal citation and quotation marks omitted).  Here, the plaintiff alleges no facts from which a reasonable person could infer that her minority status as an African-American or a woman or her status as an American (or some combination thereof) caused her to suffer an adverse employment action.  Indeed, the only decision affecting the plaintiff's employment status alleged in the complaint at all is St. Rose's denial of the plaintiff's request for a schedule change, see Compl. at 2 (alleging that the plaintiff's request for a change in schedule was denied despite her protestations about working with Acedo), which hardly constitutes the kind of "tangible change in [her] duties or working conditions" that "constitute[s] a material employment disadvantage" for purposes of Title VII.  Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (internal citation and quotation marks omitted); see also Forkkio v. Powell, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) ("Purely subjective inquiries . . . are not adverse actions."); Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999) ("Mere idiosyncrasies of personal preference are not sufficient to state

an injury."); <u>Blake v. Potter</u>, 247 Fed. Appx. 673, 675 (6th Cir. 2007) ("[T]he denial

of . . . schedule adjustments is not an adverse employment action.").

      The plaintiff also alleges that she filed an unsuccessful claim for sick leave arising from

her medical treatment "as a result of the on[-]the[-]job stress, harassment[,] and hostile working

conditions and discrimination she [has endured] while working at Safeway," but clarifies later on

in her complaint that her request "was approved and completed by [] St. Rose on June 13, 2008,

but [was] denied for payment by" her union.  Compl. at 10.  "The central focus of the inquiry in

a case such as this is always whether the <u>employer</u> is treating some people less favorably than

others because of their race, color, religion, sex, or national origin," <u>Furnco Constr. Corp. v.</u>

<u>Waters</u>, 438 U.S. 567, 577 (1978) (internal citation and quotation marks omitted) (emphasis

added); thus, absent any allegations of collusion by the plaintiff's employer and her union, any

negative actions taken by the plaintiff's union are irrelevant.  Moreover, neither of these

purportedly "adverse" actions are alleged to have occurred on the basis of racial, gender, or

national origin discrimination.  <u>See</u> Compl. at 2 (alleging only that St. Rose stated that she could

not accommodate the plaintiff's scheduling request because a "change in [the] work schedule

was not possible" (internal quotation marks omitted)); <u>id.</u> at 10 (alleging only that the plaintiff's

sick leave claim was denied by her union).  In short, the plaintiff has not alleged a prima facie

case for discrimination on the basis of race, gender, or nationality under Title VII.

      Nor does the plaintiff allege the facts necessary to sustain a prima facie case for

retaliation against Safeway.  "To establish a prima facie case [of retaliation], a plaintiff must

show that (1) she engaged in statutorily protected activity[,] (2) her employer took an adverse

personnel action against her[,] and (3) a causal connection between the two exists." <u>Holbrook</u>,

196 F.3d at 263.  As to this claim, the plaintiff again fails to allege any facts that satisfy the

"adverse action" and causality requirements of the <u>McDonnell Douglas</u> standard.  Instead, she

alleges that Acedo "retaliated" against her by "follow[ing] [the p]laintiff through the store"

because the plaintiff informed Safeway's management of her continual harassment at the hands

of Acedo.  Compl. at 4.  These allegations describe a personnel conflict, not a Title VII violation.

The plaintiff suggests in her opposition to the defendants' motion to dismiss that she

"alleges that after engaging in protected activity by bringing her allegations [of harassment] to

the attention of her [s]upervisors, she was asked to remain in the check stand when [Acedo]

arrived at work."  Pl.'s Opp'n at 4–5.  In actuality, she alleges that St. Rose "responded once" to

her complaints about harassment "by stating[,] 'I advise you to just stay in the check stand when

[Acedo] gets [to work],'" Compl. at 3, not that St. Rose compelled her to work at the check stand

against her will.  Even assuming that were the case, a "temporar[y] reassign[ment] to a position

[the plaintiff] thought undesirable" does not constitute an adverse employment action unless

"there are some other materially adverse consequences affecting the terms, conditions, or

privileges of her employment or her future employment opportunities such that a reasonable trier

of fact could conclude that the plaintiff ha[d] suffered objectively tangible harm."  <u>Brown</u>, 199

F.3d at 457.  The plaintiff fails to allege any such consequences arising from St. Rose's supposed

request, nor does she allege that St. Rose directed her to stand at the check stand as punishment

for statutorily protected activity.  Consequently, she does not allege a prima facie case of

retaliation under Title VII.

The plaintiff's hostile work environment claim is also easily dispatched.  "Title VII does

not prohibit all verbal or physical harassment in the workplace . . . ."  <u>Oncale v. Sundowner</u>

<u>Offshore Servs., Inc.</u>, 523 U.S. 75, 80 (1998).  "Rather, a workplace environment becomes

'hostile' for the purposes of Title VII only when offensive conduct 'permeate[s] [the workplace]

with <u>discriminatory</u> intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Barbour v. Browner</u>, 181 F.3d 1342, 1347–48 (D.C. Cir. 1999) (quoting <u>Oncale</u>, 523 U.S. at 78 (internal citation and quotation marks omitted)) (emphasis added).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).  Consequently, the "mere utterance of an epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment to implicate Title VII."  <u>Id.</u> (internal citation and quotation marks omitted).

Here, the only conduct alleged by Acedo or any other Safeway employee that remotely resembles harassment on the basis of one of the categories protected by Title VII is the statement allegedly made by Acedo that "it is easy for Americans to get jobs" and that "they did not have to earn them."  Compl. at 6.  To describe this offhand comment as an incident of harassment at all would be charitable.  <u>See</u> <u>Oncale</u>, 523 U.S. at 80–81 (explaining that Title VII is not "a general civility code").  To conclude that a reasonable person would infer from this remark that the plaintiff's place of employment is "permeated with discriminatory intimidation" so severe as "to alter the conditions of the [plaintiff's] employment," <u>id.</u> at 78, would be absurd, <u>see</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 778 (1998) ("[S]imple teasing . . . , offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  (internal citation and quotation marks omitted)); <u>see also</u> <u>George</u>, 407 F.3d at 408, 416–17 (holding that allegations to the effect that the plaintiff was told to "go back where she came from" on three occasions did not state a claim for hostile work environment).

The plaintiff's remaining allegations concerning the unsafe work environment allegedly maintained by Safeway, her alleged confinement in an office by Acedo, and the alleged defamation of her character by Acedo give rise to potential tort and employment-related statutory claims under District of Columbia law, not Title VII.  See D.C. Code Ann. § 32-1503 (2008) (establishing workers' compensation liability on the part of any District of Columbia employer "for injury or death" to an employee "without regard to fault as a cause of the injury or death"); id. § 32-1504 (establishing workers' compensation under § 32-1503 as the exclusive remedy for claims relating to workplace injuries or death); Cruz v. Paige, 683 A.2d 1121, 1122 (D.C. 1996) (recognizing the exclusivity of § 32-1503); see also Blodgett v. Univ. Club, 930 A.2d 210, 222 (D.C. 2007) (delineating the elements of defamation under District of Columbia law); Weishapl v. Sowers, 771 A.2d 1014, 1020 (D.C. 2001) (setting forth the elements of false imprisonment under District of Columbia law).  "A district court may choose to retain jurisdiction over[] or dismiss[] pendent state law claims after federal claims are dismissed," Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005), but  "in the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims," Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  Given the early procedural posture of this case and the lack of any apparent prejudice to the plaintiff in forcing her to pursue whatever claims may exist under District of Columbia tort and employment-related statutory law in the Superior Court of the District of Columbia, this Court discerns no reason to depart from the "usual" practice in this case.  Id.  The Court will therefore dismiss the plaintiff's remaining claims (to the extent they could be said to have been raised in the first place) for lack of subject-matter jurisdiction.

### IV. Conclusion

The Court recognizes that the plaintiff's complaint, having been filed by the plaintiff <u>pro se</u>, must be held to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  "Nonetheless, a <u>pro se</u> complaint, like any other, must present a claim upon which relief can be granted by the court." <u>Henthorn v. Dep't of Navy</u>, 29 F.3d 682, 684 (D.C. Cir. 1994) (internal citation and quotation  marks omitted).  The plaintiff's complaint does not present anything resembling a viable claim under Title VII, and any other conceivable claims that it might present under District of Columbia law should be addressed to the courts of that jurisdiction, not a federal district court.  The Court will therefore grant the defendants' motion, dismiss the plaintiff's complaint in its entirety, and close this case.

**SO ORDERED** this 26th day of August, 2009.[4]

REGGIE B. WALTON
United States District Judge

---

[4]  An order will be entered contemporaneously with this memorandum opinion (1) granting the defendants' motion to dismiss, (2) dismissing the plaintiff's complaint in its entirety, and (3) closing this case.